☐ Original                                    ☐



CLERK'S OFFICE
A TRUE COPY
Aug 27, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| One 1957 Chevrolet two-door sedan automobile (VIN VB570132636) located on the premises at 5034 N. Richmond Street, Appleton, WI, occupied by John P. Fischer | ) ) ) ) |

Case No. **21-M-478 (SCD)**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

One 1957 Chevrolet two-door sedan automobile (VIN VB570132636) located on the premises at 5034 N. Richmond Street, Appleton, WI, occupied by John P. Fischer. Officers may search the premises, including the residence and a two-car detached garage east of the residence, to seize the automobile's keys, title, registration, and other indicia of ownership, and to take pictures and video of the automobile's interior, exterior, trunk, and engine compartment. In doing so, officers may start the automobile and move it outside the garage. See also Exhibit 1 to the application.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

One 1957 Chevrolet two-door sedan automobile (VIN VB570132636), which is evidence of the crime of False Statements, in violation of 18 U.S.C. § 1001, and Supplemental Security Income Fraud, in violation of 42 U.S.C. § 1383a(a)(2). See also Exhibits 1-3 attached to the Application.

**YOU ARE COMMANDED** to execute this warrant on or before _____9-10-21_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Stephen C. Dries_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*      ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____8-27-21. 10:45 am_____      *Stephen C. Dri*
                                                                                          *Judge's signature*

City and state: _____Milwaukee, Wis_____      Hon. Stephen C. Dries, U.S. Magistrate Judge
                                                                                          *Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## EXHIBIT 1

### Property to Be Searched and Seized

One 1957 Chevrolet two-door sedan automobile (VIN VB570132636), blue or silver in color, located on the premises at 5034 N. Richmond Street, Appleton, WI, occupied by John P. Fischer. The premises to be searched include the residence and two-car detached garage east of the residence in order to seize the automobile's keys, title, registration, and other indicia of ownership, and to take pictures and video of the automobile's interior, exterior, trunk, and engine compartment. In doing so, officers do not intend to remove the automobile from the premises, but they may start the automobile and move it outside the garage.



CLERK'S OFFICE
A TRUE COPY
Aug 27, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. **21-M-478 (SCD)** |
| One 1957 Chevrolet two-door sedan automobile (VIN VB570132636) located on the premises at 5034 N. Richmond Street, Appleton, WI, occupied by John P. Fischer | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Affidavit and attached Exhibits 1-3

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Affidavit and attached Exhibits 1-3

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1001 | False Statements |
| 42 U.S.C. § 1383a(a)(2) | Supplemental Security Income Fraud |

The application is based on these facts:

See attached affidavit of Kenneth H. Smith, Special Agent/Task Force Officer, Social Security Administration, Office of the Inspector General, and Attachments 1-3 to the Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Kenneth H. Smith*
*Applicant's signature*

Kenneth H. Smith, Special Agent/TFO SSA OIG
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____**Telephone**_____ *(specify reliable electronic means)*.

Date: \_\_\_\_8-27-21\_\_\_\_

*Stephen C. Dries*
*Judge's signature*

City and state: *Milwaukee, Wis*

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Kenneth H. Smith, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant regarding one 1957 Chevrolet two-door sedan automobile (VIN VB570132636) (hereinafter "'57 Chevy") located on the premises at 5034 N. Richmond Street, Appleton, WI, occupied by John P. Fischer. The application seeks authority to search the premises, including the residence and a two-car detached garage east of the residence, to seize the '57 Chevy's keys, title, registration, and other evidence of its ownership, and to take pictures and video of the '57 Chevy's interior, exterior, and engine compartment. In doing so, officers intend to start the '57 Chevy and move it outside the garage, but do not intend to remove it from the premises.

2.      I am a Special Agent and state-certified law enforcement officer for the Wisconsin Department of Justice, Division of Criminal Investigation, and have held that position since August of 2010. Before that, I was an officer with the Milwaukee Police Department for approximately 27 years, including about 16 years assigned to investigating drug-trafficking offenses.

3.       From September 2016 to the present, I have been federally deputized as a Task Force Officer ("TFO") for the Social Security Administration ("SSA"), Office of the Inspector General ("OIG"), assigned to the Milwaukee office of the Cooperative Disability Investigation Unit ("CDIU"). CDIU's primary focus is conducting investigations of persons suspected of

fraudulently collecting benefits related to funds administered by the SSA, including Supplemental Security Income ("SSI").

4.      I have received training in the investigation of SSA benefits fraud through the SSA-OIG and continue to receive on-the-job training on a regular basis. I have conducted more than 50 investigations for SSA fraud; worked with numerous citizen witnesses, including those who report information as confidential sources ("CS") in the investigation of drug trafficking and SSA fraud; and applied for, participated in, and executed numerous search warrants regarding drug trafficking, resulting in seizures of personal property and contraband.

5.      Information contained in this affidavit was obtained by me and other OIG officials, citizen witnesses, and SSA employees, including those employed by the SSA's field offices in Appleton and Oshkosh.

6.      Based on the investigation, there is probable cause that Fischer committed the crimes of False Statements, in violation of 18 U.S.C. § 1001, and Supplemental Security Income Fraud, in violation of 42 U.S.C. § 1383a(a)(2), and that the '57 Chevy constitutes evidence of such crimes.

**PROBABLE CAUSE**

7.      At all times relevant to this investigation, John P. Fischer (dob xx/xx/1958) has resided in a rented home at 5034 N. Richmond Street, Appleton, Eastern District of Wisconsin. The property is owned by Fischer's landlord, Calnin & Goss, Inc. There are two residences on the property, including the single-family home with address 5034, which Fischer has rented and lived in since approximately 1990. Fischer also rents the two-car detached garage east of the residence, which has two bays with overhead doors and a service door between the overhead

2

doors. In 2017, Fischer re-painted the house, primarily blue, but also with murals and Bible verses.

8.      On April 27, 2021, a grand jury returned a five-count superseding indictment (Exhibit 2) charging Fischer with SSI and mail fraud (E.D. Wis. Case No. 20-CR-204). On July 2, 2021, Fischer pled guilty to SSI fraud, pursuant to a written plea agreement, in Case No. 20-CR-204. Fischer's written plea agreement (Exhibit 3) includes a recitation of Fischer's scheme to defraud and the facts to which Fischer stipulated during his sworn guilty-plea colloquy with District Judge William C. Griesbach. Fischer's sentencing is scheduled for October 5, 2021.

9.      In the written plea agreement, Fischer agreed to pay restitution as ordered by the court in the amount of $65,748 to the Social Security Administration and $7,791.54 to the Wisconsin Department of Health Services. (Agreement ¶ 25.) Fischer also agreed that all financial obligations imposed by the court are due and payable in full upon entry of the judgment of conviction or further order of the court. (Agreement ¶ 21.)

10.     In the plea agreement, Fischer also agreed to the following:

> The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly cooperate in the identification of assets in which the defendant has an interest.

(Agreement ¶ 22.)

11.     Pursuant to the above provision, the FLU provided Fischer (through defense counsel) a financial-statement form that directed Fischer to "carefully read and fully answer each and every question on this financial statement," and that "should a question or section not apply to [him], indicate same on the statement under that particular question or section."

12.     Fischer signed the form on August 9, 2021, and on August 25, 2021, he provided it (through counsel) to the FLU. Above Fischer's signature, the form contains a "Certification," stating: "I declare that I have examined the information given in this statement and, to the best of my knowledge and belief, it is true, correct, and complete, and I further declare that I have no assets, owned either directly or indirectly, or income of any nature other than as shown in this statement, including any attachment." Below Fischer's signature, the form contains a "Warning," stating: "False statements are punishable up to five years imprisonment, a fine of $250,000, or both (18 U.S.C. Section 1001)."

13.     On the form, Fischer was required to identify, among other things, all "Motor Vehicles" to include "cars . . . which are owned or operated by you"; "Other Assets" to include "registered and unregistered vintage cars"; and whether Fischer had engaged in the "Disposal of Assets for the previous 5 year period to the present . . . with a cost or fair market value of more than $500[.]" Fischer did not identify the '57 Chevy on any portion of the financial-statement form or on any of the attachments he submitted with the form.

14.     As indicated in the superseding indictment, Fischer has made two claims for SSI: first, to the Appleton field office (Counts One through Four); and second, to the Oshkosh field office (Count Five). Fischer's first claim for benefits through the Appleton office was stopped due to fraud but he continues to challenge that determination through the SSA's administrative appeals process. Fischer is currently receiving SSI benefits pursuant to his claim through the Oshkosh field office. Fischer has never disclosed to the SSA that he owns, operates, or possesses the '57 Chevy.

15.     On August 29, 2019, I conducted follow-up investigation on Fischer's SSI and mail fraud by interviewing Susan Hoppa, an employee of the Associated Bank where Fischer

deposited over $42,000 in 2018 from his Roth IRA that he had recently cashed out from Lincoln Benefit Life. Throughout Fischer's SSI claim and appeals process, he knowingly concealed the Roth IRA and Associated Bank accounts from SSA. Hoppa was very familiar with Fischer based on the numerous times he came to the bank, and she described that at least once he drove to the bank in a "real old vehicle," possibly a 1960s vintage convertible, with "fuzzy dice" hanging in it. Fischer told Hoppa that he had restored the car.

16.     I requested information from the Wisconsin Department of Motor Vehicles ("DMV") concerning vehicles in Fischer's name, but there was no vehicle fitting the description provided by Hoppa. I also conducted surveillance on Fischer at his home and when he was driving. I saw him driving a GMC Acadia, but I did not see a car as described by Hoppa.

17.     On August 23, 2021, a confidential source ("CS-1") contacted the U.S. Attorney's Office to provide information regarding Fischer. I contacted CS-1 the following day. CS-1 described that Fischer owns and possesses a "1956" Chevrolet automobile, silver or light blue, which Fischer is concealing from the government. CS-1 provided me with other information about Fischer's circumstances and criminal case that are consistent with my knowledge of the investigation and proceedings. I believe that the information that CS-1 provided about the '57 Chevy was credible.

18.     On August 24, 2021, I requested abstract-of-vehicle records from the DMV for "Leathers and More Ministries," which I know from my investigation is a bogus church entity that Fischer has used to conceal assets from SSA, including his currently owned 2012 GMC Acadia and Associated Bank accounts. I also know from my investigation that Fischer previously used the false moniker of the "Christian Alliance Church" to conceal assets from SSA.

19.     For instance, Fischer bought a 2007 GMC Acadia in June 2011 using a bank check for $27,323.25 payable to Holiday Automotive. The funds came from Community First Credit Union account #994081, which was a joint savings/money market that Fischer opened with his then-girlfriend Debra DeBauche. DeBauche was interviewed during this investigation and said she had essentially nothing to do with any transactions on the account or the Acadia. Nonetheless, Fischer listed her as a co-owner of the account and SUV, and he kept her on the SUV's title until November 2011 when he made himself sole owner. Fischer traded in the 2007 GMC Acadia for a 2012 GMC Acadia in September 2014. In addition to the trade-in, Fischer paid for the 2012 GMC Acadia using a bank check for $21,537.35 payable to Holiday Automotive. The funds came from CFCU account #2910, which was a savings/CD/money market that Fischer opened in the name of the Christian Alliance Church. Despite using "church" money, Fischer initially listed himself—not the church—as the sole owner of the 2012 Acadia. But in August 2016, after this investigation began, Fischer switched the ownership on the title to the Christian Alliance Church. Then, in December 2019, Fischer again switched the title, this time naming the owner as Leathers and More Ministries, Inc., which he registered with the Wisconsin Department of Financial Institutions in August 2018 as a "Christian Faith based Non-profit Ministries." Fischer told DFI that he drafted the registration document, and he listed himself as an agent, director, and officer of Leathers and More Ministries, and its address as (his residence): 5034 N. Richmond Street, Appleton.

20.     Pursuant to my request after speaking with CS-1, DMV provided me with two abstract-of-title reports for the '57 Chevy, namely, a 1957 Chevrolet two-door sedan automobile (VIN VB570132636), major color "blue," "kept in" Outagamie County, having a "primary owner" residing at 5034 N. Richmond Street, Appleton, 54913. One of the DMV abstracts is

6

historical and the other is current. The historical abstract indicates that from at least January 24, 2001 through April 5, 2019 when a new title was issued, John Paul Fischer was the '57 Chevy's primary owner. The historical abstract does not list other owners or lienholders. The current abstract indicates that from April 5, 2019 to the present, Leathers and More Ministries is the primary owner of the '57 Chevy. The current abstract does not list other owners or lienholders.

21.     On August 24, 2021, I interviewed another confidential source ("CS-2") who has known Fischer for years and wanted to remain anonymous because he feared for his safety from Fischer. CS-2 knows that Fischer lives at 5034 N. Richmond Street and has seen inside the two-car detached garage east of Fischer's rented residence. CS-2 describes himself as a "car guy" and said that he knows for years Fischer has kept a 1957 Chevrolet in the left-hand bay of the garage. CS-2 provided information about Fischer that I know to be consistent with other aspects of my investigation. I believe the information that CS-2 provided about the '57 Chevy was credible.

22.     On August 25, 2021, I followed an investigative lead by contacting Joseph Hewitt for potential information regarding Fischer's ownership of the '57 Chevy. Hewitt said that he had known Fischer for over 10 years, that they were friends, but they are not currently friends based on information that Fischer had posted on Facebook. Hewitt went to Fischer's residence about a year ago to reconcile their friendship, and while there, Hewitt saw Fischer's "1956" Chevy two-door hardtop, silver in color, parked in the left-hand bay of the two-car detached garage. Hewitt said the car is Fischer's "pride and joy," and that Fischer had the car since at least 2009 because Fischer drove Hewitt and his wife around in the car on their wedding day in September 2009.

## EXHIBIT 1

### Property to Be Searched and Seized

One 1957 Chevrolet two-door sedan automobile (VIN VB570132636), blue or silver in color, located on the premises at 5034 N. Richmond Street, Appleton, WI, occupied by John P. Fischer. The premises to be searched include the residence and two-car detached garage east of the residence in order to seize the automobile's keys, title, registration, and other indicia of ownership, and to take pictures and video of the automobile's interior, exterior, trunk, and engine compartment. In doing so, officers do not intend to remove the automobile from the premises, but they may start the automobile and move it outside the garage.

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

JOHN P. FISCHER,

        Defendant.

Case No. 20-CR-204

[42 U.S.C. § 1383a(a)(3)(A) &
18 U.S.C § 1341]

**Green Bay Division**

## SUPERSEDING INDICTMENT

### THE GRAND JURY CHARGES THAT:

### Allegations Common to All Counts

1.    At all times relevant to this indictment:

    a.    The defendant, John P. Fischer, was a resident of Outagamie County in the State and Eastern District of Wisconsin.

    b.    Fischer applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The SSI program, which is administered by the Social Security Administration ("SSA"), pays monetary benefits to disabled individuals with countable resources less than $2,000, and with countable income less than the federal benefit rate.

    c.    The federal benefit rate is the maximum allowable monthly SSI payment. It is set by law and subject to annual cost-of-living increases. For instance, for individual SSI applicants like Fischer, the federal benefit rate was $783 per month in 2020 and $794 per month in 2021. The federal benefit rate can be reduced if the

applicant receives unearned income from others, known as in-kind support and maintenance, to cover living expenses like rent and utilities.

d.     Accordingly, SSA cannot determine an applicant's SSI eligibility without accurate and truthful information from the applicant regarding all income and resources. SSA notifies all applicants of their duty to fully report all income and resources and any changes thereto.

e.     SSI applicants in Wisconsin also receive a state supplement based on the same income and resource information that the applicant provides to SSA.

2.     Fischer knowingly devised and executed a scheme to defraud and obtain SSI benefits by means of materially false and fraudulent pretenses, representations, and omissions about his income and resources.

3.     Fischer's scheme was essentially as follows:

a.     Fischer applied for SSI in November 2005 but did not establish that he was disabled until July 2009. SSA notified Fischer that he was still not eligible for SSI because he reported having cash and one savings account totaling just above the program's $2,000 resource limit. Fischer disputed that he had excess resources. In August 2009, he claimed that his cash and savings account had fallen below the program's $2,000 limit. He reported no other deposit and retirement accounts.

b.     Based on Fischer's reported income and resources below program limits, SSA granted him SSI benefits and began mailing him monthly checks. As a result, from October 2009 through June 2017, Fischer received monthly SSI checks totaling over $65,700 and state SSI checks totaling over $7,700.

2

c.    In fact, at the time Fischer applied for and received SSI, he knew that he was ineligible for benefits because he owned and controlled resources worth well over $2,000 that he intentionally concealed and failed to report to SSA.

d.    Fischer's disqualifying resources included a "Roth IRA" retirement account that he never reported to SSA. Fischer opened the Roth IRA in June 2003 at Lincoln Benefit Life, and he always owned the account in his name. Fischer initially contributed $10,525 to his Roth IRA in June 2003. He contributed another $22,000 to his Roth IRA between 2011 and 2015. In August 2018, Fischer requested and took a full cash surrender of the Roth IRA for over $42,000, which Lincoln Benefit Life sent to him in a check. Fischer did not report these funds and events to SSA.

e.    Fischer's disqualifying resources also included unreported deposit accounts that he opened at Community First Credit Union ("CFCU"). Fischer opened the CFCU accounts in his name and under the guise of the "Christian Alliance Church," with Fischer as a signatory, and which contained funds greatly exceeding $2,000 under his ownership and control.

f.    Fischer's disqualifying resources also included unreported deposit accounts that he opened at Associated Bank. In September 2018, Fischer deposited the check from Lincoln Benefit Life, with more than $42,000 in proceeds from his cashed-out Roth IRA, into an Associated Bank account that he opened in his name. Fischer transferred some of the funds into another Associated Bank account that he opened under the guise of "Leathers and More Ministries," with Fischer as signatory. By April 2019, Fischer withdrew most of the funds. Fischer did not report these funds and events to SSA.

3

g.     In 2016 and 2017, SSA discovered some of Fischer's disqualifying resources, including motor vehicles and deposit accounts at CFCU. As a result, SSA determined that Fischer had been overpaid for past benefits and was ineligible for current and future benefits.

h.     Fischer challenged SSA's determination and continued to falsely claim that he was entitled to past, current, and future SSI benefits. In furtherance of his ongoing fraudulent claim, he continued to make false oral and written statements to SSA, including before an administrative law judge in October 2017, June 2019, and January 2020, during which he denied, misrepresented, concealed, and failed to report his excess resources.

i.     Effective April 2020, Fischer filed another SSI claim in which he again represented that he met the program's income and resource requirements. Fischer claimed having no income since April 2020, and that his residential rent and utilities had been paid by friends and family.

j.     In fact, on September 7, 2017, May 15, 2018, and October 12, 2018, Fischer paid his own rent in advance by causing three bank checks to be issued to his landlord. Each check was in the amount of $4,200, totaling $12,600 for 36 months' advance rent through August 2020. In particular, the source of funds for the third check came from Fischer's cashed-out Roth IRA.

4

## COUNT ONE
### (SSI Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Between approximately August 2009 and January 2020, in the State and Eastern District of Wisconsin and elsewhere,

### JOHN P. FISCHER

knowingly concealed and failed to disclose any event affecting his initial and continued right to receive SSI benefits, namely, that he had previously opened a Roth IRA with $10,500, continuously owned and controlled it, contributed approximately $22,000 more to it, cashed it out for over $42,000, deposited the funds into bank accounts that he owned and controlled, and withdrew nearly all of the funds from the accounts.

2.     Fischer did so with the intent to fraudulently secure SSI benefits when no such benefits were authorized.

All in violation of Title 42, United States Code, Section 1383a(a)(3)(A).

Case 2:21-mj-00478-SCD   Filed 08/27/21   Page 17 of 39   Document 1

## COUNTS TWO THROUGH FOUR
### (Mail Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the following dates, in the State and Eastern District of Wisconsin and elsewhere,

### JOHN P. FISCHER

knowingly and intentionally executed the above-described scheme to defraud by causing the following SSI benefit checks to be delivered by the United States mail:

| Count | Date | U.S. Treasury Check |
|-------|------|---------------------|
| Two | March 31, 2017 | No. ***5275, payable to John P. Fischer in the amount of $735 |
| Three | May 1, 2017 | No. ***7978, payable to John P. Fischer in the amount of $735 |
| Four | June 1, 2017 | No. ***8199, payable to John P. Fischer in the amount of $735 |

Each in violation of Title 18, United States Code, Section 1341.

## COUNT FIVE
### (SSI Fraud)

## THE GRAND JURY FURTHER CHARGES THAT:

On or about February 26 and 27, 2021, in the State and Eastern District of Wisconsin,

## JOHN P. FISCHER

knowingly and willfully made and caused to be made a false statement and representation of a
material fact for use in determining rights to SSI benefits, namely, that Leathers and More
Ministries had loaned him $4,200 to pay his residential rent, when in fact, Fischer had used the
unreported proceeds of his Roth IRA to make the payment.

In violation of Title 42, United States Code, Section 1383a(a)(2).

7

## Forfeiture Notice

Upon conviction of mail fraud in Counts Two through Four in this Superseding

Indictment, the defendant shall forfeit to the United States of America, under 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is

derived from proceeds traceable to the offense. If such property, as a result of any act or

omission by the defendant, cannot be located upon the exercise of due diligence, has been

transferred to or deposited with a third person, has been placed beyond the Court's jurisdiction or

substantially diminished in value, or has been commingled with other property that cannot be

subdivided without difficulty, the United States of America shall be entitled to forfeiture of

substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL:

FOREPERSON

Date: April 27, 2021

RICHARD G. FROHLING
Acting United States Attorney

8

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

     Plaintiff,

 v.           Case No. 20-CR-204

JOHN P. FISCHER,

     Defendant.

---

## PLEA AGREEMENT

---

1. The United States of America, by its attorneys, Richard G. Frohling, Acting United States Attorney for the Eastern District of Wisconsin, and Timothy W. Funnell and Kelly B. Watzka, Assistant United States Attorneys, and the defendant, John P. Fischer, individually and by attorney Thomas E. Phillip, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a five-count superseding indictment, which alleges violations of Title 18, United States Code, Section 1341 (mail fraud), and Title 42, United States Code, Sections 1383a(a)(2) & 1383a(a)(3)(A) (Supplemental Security Income or "SSI" fraud).

3. The defendant has read and fully understands the charge contained in the superseding indictment. He fully understands the nature and elements of the crimes with which he has been charged, and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.     The defendant acknowledges, understands, and agrees that he is, in fact, guilty of SSI fraud, as charged in Count One and as further described in Attachment A. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment B beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

5.     The parties understand and agree that Count One carries a maximum of 5 years in prison, a mandatory special assessment of $100, and a maximum of 3 years of supervised release. The parties further recognize that a restitution order may be entered by the court.

## ELEMENTS

6.     The parties understand and agree that in order to sustain the charge of SSI fraud as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant had knowledge of any event affecting his right to receive or continue to receive a benefit for Supplemental Security Income ("SSI");
Second, the defendant concealed or failed to disclose such event to the Social Security Administration did so with the intent to defraud; and
Third, the defendant intended to fraudulently secure any such SSI benefit in an amount greater than was due to him or when no payment to him was authorized.

## SENTENCING PROVISIONS

7.     The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

2

8. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

9. The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

10. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

11. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

12. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

3

## Base Offense Level

13.     The parties agree to recommend to the sentencing court that the applicable base offense level is 6 under Sentencing Guidelines Manual § 2B1.1(a)(2).

## Specific Offense Characteristics

14.     The parties agree to recommend to the sentencing court that a 6-level increase under Sentencing Guidelines Manual § 2B1.1(b)(1)(D) is applicable to the offense level.

## Acceptance of Responsibility

15.     The government will recommend to the sentencing court that a 2-level decrease for acceptance of responsibility under Sentencing Guidelines Manual § 3E1.1(a) is not applicable to the offense level.  The defendant is free to argue that the decrease is applicable.

## Sentencing Recommendations

16.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offenses as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

17.     Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

18.     The government agrees to recommend a sentence of 18 months' imprisonment. The defense is free to argue regarding imprisonment.

## Court's Determinations at Sentencing

19.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the

4

imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 5. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

20.     The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

21.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction or further order of the court.  The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

22.     The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly cooperate in the identification of assets in which the defendant has an interest.

5

## Fine

23.     The government agrees not to recommend a fine.

## Special Assessment

24.     The defendant agrees to pay the special assessments totaling $200 prior to or at the time of sentencing.

## Restitution

25.     The defendant agrees to pay restitution as ordered by the court in the amount of $65,748 to the Social Security Administration and $7,791.54 to the Wisconsin Department of Health Services. The defendant understands that because restitution is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## Forfeiture

26.     The defendant agrees that upon conviction, the United States may seek forfeiture of property that constitutes or is derived from proceeds traceable to the offense or of substitute property.

## DEFENDANT'S WAIVER OF RIGHTS

27.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a.     If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

6

b.  If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d.  At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.  At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

28.  The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

29.  The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights,

7

including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

30.     The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

31.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## VOLUNTARINESS OF DEFENDANT'S PLEA

32.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor

8

agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7-2-21

JOHN P. FISCHER
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 7/2/21

THOMAS E. PHILLIP
Attorney for Defendant

For the United States of America:

Date: 7/2/21

RICHARD G. FROHLING
Acting United States Attorney

Date: 7/2/21

TIMOTHY W. FUNNELL
Assistant United States Attorney

Date: 7/2/21

KELLY B. WATZKA
Deputy Chief United States Attorney

10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                  Plaintiff,                  Case No. 20-CR-204

        v.

JOHN P. FISCHER,

                  Defendant.

## ATTACHMENT A

**THE GRAND JURY CHARGES THAT:**

### Allegations Common to All Counts

1.    At all times relevant to this indictment:

    a.    The defendant, John P. Fischer, was a resident of Outagamie County in the State and Eastern District of Wisconsin.

    b.    Fischer applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The SSI program, which is administered by the Social Security Administration ("SSA"), pays monetary benefits to disabled individuals with countable resources less than $2,000, and with countable income less than the federal benefit rate.

    c.    The federal benefit rate is the maximum allowable monthly SSI payment. It is set by law and subject to annual cost-of-living increases. For instance, for individual SSI applicants like Fischer, the federal benefit rate was $783 per month in 2020 and $794 per month in 2021. The federal benefit rate can be reduced if the

applicant receives unearned income from others, known as in-kind support and maintenance, to cover living expenses like rent and utilities.

d.      Accordingly, SSA cannot determine an applicant's SSI eligibility without accurate and truthful information from the applicant regarding all income and resources. SSA notifies all applicants of their duty to fully report all income and resources and any changes thereto.

e.      SSI applicants in Wisconsin also receive a state supplement based on the same income and resource information that the applicant provides to SSA.

2.      Fischer knowingly devised and executed a scheme to defraud and obtain SSI benefits by means of materially false and fraudulent pretenses, representations, and omissions about his income and resources.

3.      Fischer's scheme was essentially as follows:

a.      Fischer applied for SSI in November 2005 but did not establish that he was disabled until July 2009. SSA notified Fischer that he was still not eligible for SSI because he reported having cash and one savings account totaling just above the program's $2,000 resource limit. Fischer disputed that he had excess resources. In August 2009, he claimed that his cash and savings account had fallen below the program's $2,000 limit. He reported no other deposit and retirement accounts.

b.      Based on Fischer's reported income and resources below program limits, SSA granted him SSI benefits and began mailing him monthly checks. As a result, from October 2009 through June 2017, Fischer received monthly SSI checks totaling over $65,700 and state SSI checks totaling over $7,700.

2

c.      In fact, at the time Fischer applied for and received SSI, he knew that he was ineligible for benefits because he owned and controlled resources worth well over $2,000 that he intentionally concealed and failed to report to SSA.

d.      Fischer's disqualifying resources included a "Roth IRA" retirement account that he never reported to SSA. Fischer opened the Roth IRA in June 2003 at Lincoln Benefit Life, and he always owned the account in his name. Fischer initially contributed $10,525 to his Roth IRA in June 2003. He contributed another $22,000 to his Roth IRA between 2011 and 2015. In August 2018, Fischer requested and took a full cash surrender of the Roth IRA for over $42,000, which Lincoln Benefit Life sent to him in a check. Fischer did not report these funds and events to SSA.

e.      Fischer's disqualifying resources also included unreported deposit accounts that he opened at Community First Credit Union ("CFCU"). Fischer opened the CFCU accounts in his name and under the guise of the "Christian Alliance Church," with Fischer as a signatory, and which contained funds greatly exceeding $2,000 under his ownership and control.

f.      Fischer's disqualifying resources also included unreported deposit accounts that he opened at Associated Bank. In September 2018, Fischer deposited the check from Lincoln Benefit Life, with more than $42,000 in proceeds from his cashed-out Roth IRA, into an Associated Bank account that he opened in his name. Fischer transferred some of the funds into another Associated Bank account that he opened under the guise of "Leathers and More Ministries," with Fischer as signatory. By April 2019, Fischer withdrew most of the funds. Fischer did not report these funds and events to SSA.

3

g.     In 2016 and 2017, SSA discovered some of Fischer's disqualifying resources, including motor vehicles and deposit accounts at CFCU. As a result, SSA determined that Fischer had been overpaid for past benefits and was ineligible for current and future benefits.

h.     Fischer challenged SSA's determination and continued to falsely claim that he was entitled to past, current, and future SSI benefits. In furtherance of his ongoing fraudulent claim, he continued to make false oral and written statements to SSA, including before an administrative law judge in October 2017, June 2019, and January 2020, during which he denied, misrepresented, concealed, and failed to report his excess resources.

i.     Effective April 2020, Fischer filed another SSI claim in which he again represented that he met the program's income and resource requirements. Fischer claimed having no income since April 2020, and that his residential rent and utilities had been paid by friends and family.

j.     In fact, on September 7, 2017, May 15, 2018, and October 12, 2018, Fischer paid his own rent in advance by causing three bank checks to be issued to his landlord. Each check was in the amount of $4,200, totaling $12,600 for 36 months' advance rent through August 2020. In particular, the source of funds for the third check came from Fischer's cashed-out Roth IRA.

4

Case 2:21-mj-00478-SCD   Filed 08/27/21   Page 34 of 39   Document 10

## COUNT ONE
### (SSI Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Between approximately August 2009 and January 2020, in the State and Eastern District of Wisconsin and elsewhere,

**JOHN P. FISCHER**

knowingly concealed and failed to disclose any event affecting his initial and continued right to receive SSI benefits, namely, that he had previously opened a Roth IRA with $10,500, continuously owned and controlled it, contributed approximately $22,000 more to it, cashed it out for over $42,000, deposited the funds into bank accounts that he owned and controlled, and withdrew nearly all of the funds from the accounts.

2.     Fischer did so with the intent to fraudulently secure SSI benefits when no such benefits were authorized.

All in violation of Title 42, United States Code, Section 1383a(a)(3)(A).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

               Plaintiff,                         Case No. 20-CR-204

       v.

JOHN P. FISCHER,

               Defendant.

---

**ATTACHMENT B**

---

     The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, the offense:

1. This case involves defendant John Fischer's receipt of Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, which pays monthly benefits to disabled applicants who have little to no income and no more than $2,000 in countable resources. The SSI program is administered by the Social Security Administration ("SSA"). SSI recipients are subject to periodic reviews to ensure continuing eligibility, and its funding comes from the U.S. Treasury's general fund. In Wisconsin, SSI recipients receive monthly supplemental benefits based on the same application and eligibility standards under Title XVI.

2. A single person who lives alone can qualify for SSI by meeting two requirements: (i) one or more disabling conditions preventing gainful employment and (ii) minimal income and no more than $2,000 total in countable resources. Exempted resources include a residence and a vehicle. Again, disability alone is not enough to qualify because SSI is a needs-based program. SSI applicants are notified by SSA of the maximum allowable income and resources, must declare under penalty of perjury that the information they provide is correct, and are notified of their ongoing duty to truthfully and accurately report all income and resources to SSA in order to determine eligibility.

3. Since 1990, Fischer has lived alone in a rented home in Outagamie County, in the State and Eastern District of Wisconsin. In 2005, he applied for SSI through SSA's field office in Appleton and reported having a 1979 Chevy pickup truck, cash of $100, and one savings account with $2,000 at Community First Credit Union ("CFCU").

4. Due to questions about Fischer's disability and reported resources above $2,000, he was not found eligible by SSA to receive SSI until 2009. At that time, he again listed the Chevy pickup as his only vehicle. But in a significant revision to his prior application in 2005, Fischer claimed that his other resources were now below $2,000. In particular, he reported that at the time of his revised application and going forward, he had only the following resources:

    - Cash of $100 from November 2005-August 2009, $800 in September 2009, $450 in October 2009, and $100 from November 2009 and continuing.

    - One savings account at CFCU with just over $2,000 from July 2007-August 2009 but with $118.03 from September 2009 and continuing.

5. In fact, at the time of Fischer's 2009 ongoing SSI application, he owned and controlled several disqualifying resources, namely, deposit accounts at CFCU and a "Roth IRA" retirement account at Lincoln Benefit Life. And at various times between 2005 and 2018, including when Fischer was receiving monthly SSI benefit checks, Fischer's countable resources included bank and retirement accounts that held more than $5,000, $10,000, $20,000, and $40,000. Fischer's Lincoln Benefit Life Roth IRA alone was valued at $10,500 when he opened it in 2003. He contributed about $22,000 more to it from 2011-2015, and it had grown to over $42,000 by 2018 when he cashed it out, deposited the funds in undisclosed accounts at Associated Bank, and withdrew nearly all of the funds—all of which he knowingly concealed from SSA.

6. As to the Roth IRA in particular:
    - Fischer established the Roth IRA in 2003 through a financial advisor at CFCU by transferring funds via a bank-issued check (below) to Lincoln Benefit Life. Fischer had the authority to cash out the Roth at any time.



2

- Fischer made additional contributions to his Roth IRA from his CFCU accounts, all without disclosing the funds, accounts, and events to SSA. Among his additional contributions were $6,000 in October 2011, $6,000 in January 2012, $6,500 in May 2013, and $3,500 in March 2015.

- SSA stopped Fischer's SSI in 2017 due to excess resources and requested that he repay past benefits. Fischer immediately challenged that determination and demanded reinstatement of ongoing benefits. While the administrative appeal process was pending, Fischer cashed out the undisclosed Roth IRA. On August 22, 2018, Lincoln Benefit Life mailed Fischer a check (below) for $42,941.16. He took it to Associated Bank and deposited it into an undisclosed savings account that he opened in his name.



Account 2185595168   Date 09-10-2018   Amount 42941.16   Serial 0
AcctCC 2185595168

Account 5008024340   Date 09-10-2018   Amount 42941.16
Serial 8900070475   AcctCC 5008024340

7. On August 21, 2018, Fischer created an entity called "Leathers and More Ministries LLC," with the registered agent and principal office of Johnny Fischer, 5034 N. Richmond St., Appleton. Under that entity's name, he opened another account at Associated Bank. He transferred some of the (prior-Roth) funds into the Leathers and More account, but by January 11, 2019, he had withdrawn nearly all of the money and closed the account. By June 2019, only $169.42 remained in his other account.

8. Because Fischer failed to report his resources to SSA, SSA and the State of Wisconsin mailed monthly SSI benefits to Fischer from December 2009 through June 2017—when his benefits were stopped after SSA found some, but not all, of his excess resources at CFCU. By that time, Fischer had received the following SSI benefits to which he wasn't entitled:

Federal:   $65,748
State:     $7,791.54
Total:     $73,539.54

3

Date: 7.2.21           JOHN P. FISCHER
Defendant

Date: 7/2/21           THOMAS E. PHILIP
Attorney for Defendant

Date: 7/2/21           RICHARD G. FROHLING
Acting United States Attorney

Date: 7/2/21           TIMOTHY W. FUNNELL
Assistant United States Attorney

Date: 7/2/21           KELLY B. WATZKA
Deputy Chief United States Attorney

4